Case No. 18-1163, California Communities Against Toxins et al. Petitioners v. Environmental Protection Agency et al. Ms. Dasani for the petitioners, Mr. Rosen for the respondents, Mr. Llewellyn for the intervener. Mr. Tsai, good morning. Good morning. May it please the Court, Kushi Tsai on behalf of the petitioners. I've requested five minutes for rebuttal. EPA's transfer-based exclusion removes from RCRA's Excuse me a second. Can you raise that please? Raise. Sorry. I'll start again. EPA's transfer-based exclusion removes from RCRA's protective hazardous waste cradle-to-grave management program hazardous waste that generators pay to get rid of. These wastes are toxic and can poison people and the environment. They can even spontaneously combust simply when exposed to the air. When generators pay to get rid of these materials, they are discarded. EPA has never said otherwise. In the merits, could you think about standing a moment? Sure, Your Honor. I understand that if you don't prevail on that argument, you won't get to the other one. Sure. Could you give me just in a word or two what the harm is, the injury that's particular to your client Absolutely. caused by the respondent that's remediable in this proceeding? Your Honor, there's no dispute here that petitioner's members live, work, and recreate near facilities that are Living, working, and recreating doesn't tell me the harm. Give me one or two words that says what the injury is They have reasonable concerns, a substantial probability that they will be harmed once this Is concern enough to give you Your Honor, it's not simply concern. It's the concern and how that affects their enjoyment of their everyday lives. Numerous petitioner's members have explained Now, we've got numerous cases that say that being interested in the subject is not sufficient Your Honor, in Sorry. Go ahead. We have other numerous cases that say the harm has to be imminent or actual. What is imminent or actual here in the way of harm that's something I'm really being worried about? It is the fact that these facilities are likely to use this exclusion, which automatically strips away the protections that RCRA was meant to protect against. In this case, what we're dealing with are facilities that have either already used the exclusion when it was last available before EPA eliminated it, and are managing Did any harm occur, injury occur? Your Honor And they already used it? What makes this an imminent injury as opposed to simply a worry? It's the very fact that this exclusion is taking away the protections that Congress and EPA have deemed necessary to protect against the very risks. They are exposed to the very types of hazards the statute is meant to protect against. This Court has found standing in very similar circumstances in the 2014 Sierra Club and NRDC cases that we cite in our reply brief. Sierra Club being your best case on that? I would point to Sierra Club and also, in fact, the Safe Food case, which also dealt with another RCRA hazard. The Safe Food case? Where the Court stated a conclusive showing of demonstrable health or environmental impacts is not necessary for purposes of standing. If there is a violation of RCRA and petitioners were exposed to the materials, that fact alone would suggest the probability of environmental impact occurring. There are also numerous cases that are similar in the sense that all the petitioners' members need to prove is that they have reasonable concerns that there is a substantial probability of harm as there is in this case. Again, there is no dispute that these facilities will use this exclusion, and that diminishes their ability to enjoy everyday activities. Getting back to the merits here, what we're dealing with is that when generators are paying to get rid of hazardous materials, they are discarded. Again, EPA has never said otherwise. Instead, what it's done is focus its entire inquiry on whether these materials are ultimately recycled by third-party reclaimers. But still the question remains whether they're within the definition of discarded or not. Is that not really what the case turns on? That's correct. And we have – and that is the very question that's before the Court. EPA instead focuses on the wrong question, which is simply whether these materials are being recycled, ultimately. EPA is – I understand that to be their argument that they're not discarded since they're being recycled. It's not that they focus on something different or wrong, but it is the same focus, is it not? Well, they're equating recycling and no discards. But the Court and EPA itself has explained that materials that are legitimately recycled can be discarded, and this is one of those cases. When generators have to pay to get rid of these materials, they're discarding them in the ordinary sense of the term. It's well established that this – Suppose for a moment that instead of having different ownership on the generating end and on the receiving end, you have an entity that owns both the generator of the product or waste and owns the other end, but they don't own a trucking company, so they hire a trucking company to haul their product or waste to the second site. Would that be discarded? If the generator and the reclaimer are the same, under the same ownership? Yes, but they pay a trucking company to haul the product. I think that's a very different situation than what the transfer base – I think I asked you if they would be discarded or not. I believe it could be, and I believe – It would be discarded if they paid somebody to haul it, but they kept ownership of the product the whole time. I think here, Your Honor, what the core question is and the issue is that what is happening is that the generator has these materials that they find are negatively valued, such that they are paying another company to take them off their hands. It's that payment, the transfer, and the negative value that clearly, in the ordinary sense of the term, constitutes discard. Let me suppose we're talking about something other than the hazardous waste. Let's say you own a piano, and you don't need it anymore. Your kids are grown up and they're not playing the piano anymore. You want to give it to your church, and you pay somebody to haul that to your church, and you take a donation for giving that piano to the church. Have you discarded it, or have you donated it? A donation, Your Honor, is still a very different question here. That's why we call these hypothetical. Sure, and it's one that the court doesn't have to get to in this situation because, again, what we're dealing with is a very narrow, specific circumstance where the generators have negative value, find negative value in these materials. So did the piano, but you don't want to tell me that that was discarded. Well, I think in that circumstance, Your Honor, there is an argument that it could be discarded, and I think there's also an argument that EPA might make where it's not. And the point in our case is that there is no argument that this is not discarded. It's discard in the ordinary sense of the term, and EPA, on the record, never said otherwise. Instead, EPA focused its inquiry entirely on whether these materials are going to be recycled. Again, EPA itself in the record at JA0951 and 0955 expressly recognized that both discarded and non-discarded materials can be recycled. That is a longstanding policy of the agency. It's why there is an entire system within the Subtitle C program that's meant specifically for hazardous waste recycling. So is it critical to your position, then, that the generator finds no value whatsoever in the material? It's critical that those materials are negatively valued to the generator. They're also — Well, I was thinking of Judge Santel's question where the generator and the recycler are the same party. So the assumption under that is that the same party thinks there is some value such that the material should be recycled. That's right, Your Honor. So why would it make a difference that someone else finds value in the material? In terms of whether the material is discarded. That someone else in this situation — In other words, two different owners. So the first owner pays to get the material to the second owner who's going to recycle the material. Why would that make a difference? It's because at that instance, at that moment, when the generator has its negatively valued material and is getting rid of them, it is discarding them. It doesn't matter whether the reclaimer ultimately finds value in it and can create something out of it. That's great if they can. But in this case, it seems as though that's probably not the case, given that they are being paid to take them away. So when you say the generator has no value to the extent it is a profit entity, why wouldn't it be valuable to the extent that any value can be recovered for anyone? In this case, the key is that it is negatively valued to the generator. They can't sell it. They can't give it away. They have to pay to get rid of it. That's discard in the ordinary sense of the term. And even if we were to think about it in a different way, the point here is that EPA — another point here is that EPA did not explain why this is not discard. Again, it's focused solely on whether materials are legitimately recycled. But that — and this Court has held in the Shell Oil case, in API 1, both of which we cite, that simply because materials are ultimately recycled does not mean that they're not discarded before they're recycled. Again, I would point to EPA's — Does that mean that they are discarded before they're recycled? Not necessarily. The negative that existed in those cases does not necessarily apply here, does it? I'm sorry, the last part. Just because we held that the agency was not unreasonable in calling something discarded in those cases does not mean that it would here. That's right. And it is in this case where there is clear discard that's occurring at the generator when it is paying to get rid of the materials, that they are discarded and that these materials are waste and need to be regulated as such under Subtitle C safely. So pushing back from the agency's point of view, if the generator has some materials as to which it sees no value, but at the very moment those materials cease to be of value to the generator, the generator literally puts them in a plastic mold and ships them off. In other words, there is no gap between the generator's sort of lack of interest in the product and the recycling. You see no possibility then of a gap not existing in that situation? EPA never explains that that's the situation that's covered by this exclusion. And I would still say to the extent that the generators are paying to get rid of these materials, it's discarded. So you don't understand the rule to contemplate that the generator literally on day one at 9 a.m. determines this material is of no value and at 9.05 turns it over to a recycler. That simply doesn't work. No. In fact, Your Honor, one of the problems with this rule is that these materials can be managed at the generator until they're sent off. And they are no longer subject to RCRA's very protective requirements for storage times. So EPA comes back and says, ah, but the conditions kick in. And we've determined that those are adequate if they are properly adhered to. Those conditions, Your Honor, are all about whether legitimate recycling is occurring, what will occur ultimately at the end of this process. They say nothing and they don't report to you. EPA never claims that they do say nothing about whether or not there's discard when the generator pays to get rid of materials. I would add an important note is that the Safe Food case provided important guidance to EPA in terms of determining whether transfer itself, where materials are transferred to a reclaimer, constitutes discard. And they specified factors, both market valuation, that the materials are actually treated in the market as positive products, positively valued products, not negatively valued materials, and have chemical similarity. EPA ignored both of those factors. They don't even attempt to explain how those are satisfied here, and they're not. I mean, it's quite the opposite. The materials here are negatively valued. They are waste. They are not positively valued products. And EPA has no idea whether they're chemically similar to other materials. And this is a core part of this. To the extent that EPA claims that there is discard that's prevented by way of environmental releases by these conditions, that's, again, a different question. Those conditions do not prevent the discard that we're talking about when generators pay to get rid of the materials. And we have argued that they are not sufficient for even preventing the discard that EPA considered. And this is key. The moment that these materials are generators are paying to get rid of them is the moment when materials are pulled out of RCRA and they are subject no longer to the protective requirements of Subtitle C and are instead only subject to these far weaker conditions that EPA has created in lieu of Subtitle C and that it itself has found are lacking in several significant respects. All right. We'll give you some time to reply. Thank you. Mr. Rosen? Good morning, Your Honor. Perry Rosen for EPA along with Patrick Jang sitting at the council table. There are some important jurisdictional issues that need to be addressed, quite obviously, before we get to the merits. I just want to address a few of those and petitioner's response and reply brief. Going to the standing issue, Judge Sentelle, you are correct. There is at least three elements here that are very important. There has to be an actual identifiable injury. It has to be, quote, certainly impending, and it has to come from the challenge patch. And petitioners have put forth no evidence whatsoever that there is any injury that satisfies those requirements. We've had seven years of the application for this statute. In the 2015 regulation, EPA reported that that 2008 regulation is working. Actually, I thought the record was clear that we don't have seven years of application because a lot of industries decided to wait because EPA decided to withdraw the exclusion and substitute something else. I mean, that's a part of the record. Actually, the petitioner's declarations say that they say they live near these facilities and these facilities have been using this provision. So they themselves say that this has been put in place, but they claim no injury from it whatsoever. Well, they do claim injury. You disagree as to whether it's sufficient injury. Well, they claim no identifiable injury. No, they say they live there. They breathe there. They can't go to the park. They can't use the river, the creeks. Their dogs drink the water that is exposed to these hazardous materials. But they never explain why they can't. Why they can't what? Why they cannot stroll by the park. Their claim to standing is nothing more than I live near a facility where there are certain things I don't like, and I have a fear that something may happen. I thought, though, that the Supreme Court made it clear that, well, in the famous dam case, you didn't have to wait until the dam knocked your house down. If you see that the federal government is planning to build a dam, you have standing to come into court to challenge. All right. So here you have these industries. An industry doesn't deny. Industry doesn't even challenge petitioners' standing here. They are spewing hazardous materials into the environment. The question is what happens to those hazardous materials? Are they subject to RCRA or not? So, I mean, I'm just not clear what the sort of standing argument is. Well, again, there is a requirement that it be certainly impending. Right. And they've put forth no evidence that any injury is, quote, unquote, certainly impending. Okay. And that is bolstered by the fact that they have seven years of history of the application of the statute. There's never been an escape for violations. That's right. The only thing they cite is pre-2008 activities, and those are the exact activities that the 2000 regulations were designed to address. Those are the exact activities that EPA reports unchallenged in the 2015 regulation that are working. And they certainly don't tie any fear of injury to their challenge here, which is payment. They don't explain why payment will change things. Their claim is also out of time. Do you also challenge the informational? Yes. I know in your brief you do. You say, well, they never ask for anything. That's right. And this specific provision contains a plethora of informational requirements that EPA put in there over the objection of industry. Industry in their comments said, you can't do that, and you can't do that in part because RCRA doesn't apply. And EPA responded that, no, we are going to do that. We are putting in requirements to compile and disseminate the information about how all of this process works. And EPA said, we're using the RCRA provisions. As to the recycling, right? As to the informational requirements, yes. All right. But if I am the producer, and I produce this hazardous material, and I decide it's of no value to me, and I dump it on my land, and then I pay somebody to haul it away, your conditions don't speak to that. That's not challenged in this regulation. What I'm getting at is the argument is, how do people find out what I'm doing to the hazardous material? Because these regulations provide for the dissemination of this information. Of what information? Of information from A to Z, all of those requirements, the transfer conditions. When did this material come? Where did it come from? Was it held for less than 10 days? That's after the fact. What did you do with it? They're talking about before the fact. That's not any different than the RCRA provisions. The RCRA provisions provide for similar type of information. That's what they're saying they're being deprived of. They made no attempt to say that the provisions in this rule are any different. The provisions, the informational provisions from this rule absolutely come from RCRA. EPA stated that. As to the timeliness requirement, it's obviously outside of the 90 days. Seven out of the eight petitioners failed to file, and the eighth petitioner dismissed their claim. They come back on their reply brief and said, in order to use the after arising doctrine, they have to show that their claims would not have existed at the time they filed their claim. They make no attempt to do that. Well, that they weren't right or they were moot. That's what they say on the reply brief. That is correct. Well, but you don't deny that EPA moved to hold an abeyance and then withdrew, saying the exclusions. They dismissed their claims with prejudice, unlike in the 2012 case when industry petitioners just held their case in abeyance. And that's a key distinction in this case. In ego preacher industries.  If it was dismissed with prejudice, there wasn't any claim to bring. I mean, EPA had withdrawn the exclusion that they were challenging. So their claims were what? Moot. Because EPA had agreed to withdraw it. EPA issued a new regulation in 2015. Petitioners' claims were ripe for seven years. We're back in 2010. Okay. Right. So there is a gap. In 2000, the regulations issued in late 2008, petitioners filed their claim in 2009. Right. In the ego preacher case, the court looked at the dichotomy of ripeness and a 90-day filing requirement. And the court said ripeness is a prudential doctrine that the court can apply. And it applied it in this case as to claims that had been timely filed under the statute, the industry claims. So let me ask you, counsel. The difference is these have not. Counsel. Yes. Sierra Club files its complaint in 2009. EPA moves to hold the matter in abeyance. Yes. Then EPA voluntarily withdraws the exclusion. Four years later. Right. Right. So the matter's moved. EPA's gotten rid of what the complaint was all about. So then when EPA comes back and restores the exclusion, then Sierra Club, not Sierra Club, but petitioners come back with their environmental objections. That's not after a rising? No, I don't believe it is. Okay. That's a claim that was dismissed with prejudice. The after a rising doctrine doesn't allow a party to undismiss a claim that they voluntarily dismissed with prejudice. Okay. And just to talk about this retrospective ripeness doctrine out of the evil Pritchard case. The court there very clearly said when you're dealing with ripeness, but when you're dealing with a 90-day filing requirement, the petitioner makes his own ripeness determination at its own risk. And what the court determined that in that situation, you either have to, they either have to establish a claim that was non-existent at the time, within that 90-day filing period. That's not the case here because, as they say in response to our waiver claim, that they say they made comments, they raised these arguments in their comments even before the action was filed. Or you have to show that the claim was not right within the 90-day period. And this claim was right within the 90-day period. The first time it could not have been right was at least under the 2012 decision, was in 2011 when they put out, when EPA put out the proposed rule. Let me, there are the other, the issue preclusion defense and the waiver defense, but let me move on since I just have a few minutes left to the payment disqualifier. The central issue in this case. The issue is about what is it about payment that changes things. Petitioners are not challenging recycling done by the generator. Petitioners are not challenging recycling under these rules, even done by a recycler. But they say payment changes everything. Where is that in the statute? Where is that in the word disposal? Where is that in the word discard? They put forth nothing that changes material that is deemed not waste because it is recycled and says that the money changes everything. Your Honor, in your example with the donation of the piano, when I donate my piano or you donate your piano to a charity or an organization, they are going to use that. It's not being disposed of. They're going to use it. And it doesn't matter if they pay the $100 to truck it over or I pay the $100 to truck it over. It's not being disposed of. It's being reused. And that was the purpose that Congress put that in the statute. We want to encourage that so it does not become part of the waste problem. The section we are talking about, section .4, has over 30 exemptions in it. There are exemptions for all kinds of specific materials. Petitioners are not challenged in that. Nobody else challenged those. They apply to specific materials, not generally here. None of those get disqualified because payment is made for the material by the recycler. They're all proper recycling, and therefore they are all outside of RCRA. And EPA did speak to this issue. It spoke to the value. It's all through the comments here. And EPA determined that, you know what? It is an issue to be concerned about, and we're going to address it. We're going to address it by requiring that the product that's recycled be something of value, that it not just be a scam to trash material. And petitioners do not challenge any of that. It has to be treated as something of value before it's recycled, and then it has to produce something of value, and it has to contribute to the recycling process. That was what Congress asked EPA to do, set forth regulations to keep some of this out of the process. Petitioners' position is inconsistent with the statute. It's inconsistent with at least five decisions of this court, which said over and over again, with complete clarity, there was no question that legitimate recycling is not. And this is what I asked your friend on the other table. What is your best case on that? I would say battery recyclers. Battery recyclers, also AMC-1 in the later cases, but battery recyclers, in the judging, whether hazardous materials are disposed of, thrown away, or abandoned, i.e., discarded, that's their statement, they say secondary materials destined for recycling are obviously not of that sort. They go on to say, quote, as we have said, materials stored for recycling plainly is not in that category. And then they question the use of the English language to say that this material is not used. I see my time is up, unless there's any questions. All right. Thank you, Your Honor. Mr. Dwellin. May it please the Court, I'd just like to add a couple of thoughts on behalf of the interveners. On the statute of limitations issue, it's not clear to us from their reply brief whether petitioners continue to rely on the Alaska case, but I'd like to urge the Court to consider very carefully the implications of applying Alaska, which we think for reasons stated in our brief is quite distinguishable, or even a theory based on the Honeywell case, to a case like this. And that is, if every time a rule, a prior rule, gets reinstated because the Court agrees there's something wrong with the current rule, that means that the clock starts running again. Then here's the situation you potentially have. Let's just say for the sake of argument, the Court today reaches the merits, agrees with the petitioners, and vacates the 2008 transfer-based exclusion. Presumably, that would reinstate the 1985 rule on reclamation, which this rule was designed to fix, frankly. Presumably, anyone from industry could now bring a new challenge to the 1985 rule. And then let's assume that the Court agreed with industry that that rule should be vacated. If that rule were vacated, then we would go back to the May 1980 rule. Once again, presumably, the clock starts running again. It seems to us unimaginable that Congress intended such a result. When it created the statute of limitations in RECRA. And just to briefly address Judge Rogers' concern on mootness, we don't necessarily agree that in 2015, the original challenge that Sierra Club had, and Sierra Club was the only one. Everybody else sat on their rights. Sierra Club was the only one that filed a challenge. It's not necessarily clear that its challenge became moot. And the reason is that, as the Court recognized in API 3, the exclusion never really went away. The exclusion was renamed, and some new conditions were added to it. That was in 2015. Yes, Your Honor. What about before that? The earlier exclusion had been withdrawn. Well, no, that was the time. In the 2015 rule. They brought it back. No, the 2018 rule was when it came back, and that was as a result of the Court's decision in API 3. So what brought the rule back was simply the Court's vacatur of the 2015 rule. So you don't think it was moot? We don't think it was necessarily moot, and we agree with Mr. Rosen that the court in Eagle Pitcher said, you know, the court is really ill-equipped to sort of engage in retroactive rightness analysis. I would say the same has got to be true of retroactive mootness analysis. What about when there's a joint stipulation of dismissal? Well, I don't know why that would necessarily – I mean, frankly, I think Sierra Club made a bad deal. What they should have done in their own interest – No, that's a different issue. What I'm trying to understand is you said it's not moot, but it's been voluntarily dismissed. What's left at that point? Well, the claim was still there. The arguments that they had were still there. They voluntarily dropped them. I mean, what could they do with it? They could have done what API did. We had a challenge, and our case was held not right. And then when the 2015 rule was promulgated, we moved for consolidation. And I think that would have made a lot of sense. I think we might not be here today because it would have been very clear that Sierra Club was challenging both the 2008 rule and the 2015 rule. The issues were all the same, and the court could very, you know, efficiently have dealt with those claims. If I may briefly address the merits as well, here's where we think the petitioners get it wrong in terms of what EPA actually did. The petitioners say in their opening brief at 12 that EPA did not determine that any of the excluded wastes are actually not discarded. EPA did not determine that all or any of the excluded wastes are treated, quote, more like valuable products than like negatively valued wastes, close quote. That is simply not so. In the response to comments, EPA explained, quote, EPA has determined the material is not a solid waste in the first instance for a number of reasons, all of which show that the material is treated as a commodity and not as a waste, close quote. That's at page 973 of the joint appendix. At page 969 of the joint appendix, the agency said, Each of the restrictions and or conditions is specifically linked to defining when the hazardous secondary materials are not discarded. We submit that the argument that payment equals discard is questionable on its face. That's evidenced both by the court's very important questions to petitioners' counsel today, similar questions that were asked by the court in API 3, and in fact we submit that the court actually decided by necessary implication this issue in API 3. And to the extent it's questionable, that is a questionableness or an ambiguity that the agency can afford and the petitioners cannot afford. The agency did what it was supposed to do. It reasonably stated its authority. It explained what it was doing. It said these are not discarded because they're being treated as commodities. Perhaps a couple of examples, if I may. Your time is up. Thank you, Your Honor. So we'll wind it up. All right. Does Ms. Desaia? All right, why don't you take two minutes? Thank you, Your Honor. Just to hit a few points in response. I'm going back, Judge Sentelle, to your donation hypothetical. A key distinguishing factor here is that the reclaimers under the transfer-based exclusion, it's negatively valued for them as well. They find value in the payment of the fee. It's not necessarily that they find value in what the product is. They're getting paid to receive them. That is a distinction between donating something that's valuable to the end user. On standing, again, this case is very consistent with the 2014 cases that we cited. Petitioners do not have to prove that they've already been poisoned in order to challenge this rule, which will allow that to happen. On informational standing, the conditions that EPA points to are nothing like the ones that RFRA would provide. The information on inspections is mandatory and must be provided to the public. Timeliness, EPA and interveners have waived the argument that the dismissal that Sierra Club issued has any sort of effect on whether this case can proceed under after rising grounds. Alaska squarely deals with exactly the type of issue that we have here. The claims were extinguished in the prior case, and then they were brought back to life as new causes of action once the court reinstated and EPA reinstated the transfer-based exclusion. EPA itself, on the merits, concedes that it did not consider the question here. At page 47 in its brief, it very clearly recognizes that it did not identify that hazardous waste that generators have to pay to get rid of is a type of discard. For that reason alone, this issue should be resolved in petitioner's favor, and the exclusion should be vacated so that Subtitle C protections are restored. Thank you very much. Thank you.
judges: Henderson, Rogers, Sentelle